The plaintiff, Ryan Tilden, seeks to hold the defendant, Donald Cole, personally liable for repayment of a loan that she made to Preston Ventures, Inc., and/or Preston Ventures, LLC (collectively, Preston Ventures). After a bench trial, a Superior Court judge entered judgment for the defendant. The plaintiff appeals. We affirm.
Background. We set forth the basic material facts, drawing extensively from the trial judge's thoughtful and thorough findings of fact, rulings of law, and decision.[2] Alexander Cole is the son of the defendant.[3] ,[4] In 2008, Alexander purported to operate Preston Ventures, an equity investment business. The defendant and his wife loaned Alexander $200,000 to help him start the company. The defendant also allowed Alexander to use his name on the company website as chairman of an advisory board, and the defendant informally gave Alexander business advice.
In February, 2010, the plaintiff entered into a dating relationship with Alexander. The plaintiff socialized with Alexander and the defendant and was present when Alexander and the defendant discussed business. The plaintiff believed that Alexander relied on the defendant for business advice.
In April and May, 2010, the plaintiff loaned Preston Ventures a total of $25,000 to allow Alexander to travel to India for business and she joined him on that trip. Alexander told the plaintiff that the loan would be repaid with interest.
In August, 2010, the plaintiff ended her relationship with Alexander. Also that month, she spoke with the defendant for the first time about the loan that she had made to Preston Ventures and sought his assistance in seeking repayment.
The plaintiff and Alexander resumed their relationship in November, 2010. In May, 2011, Alexander formed Preston Wealth Management, LLC (Preston Wealth), and told the plaintiff that the assets of Preston Ventures were being transferred to Preston Wealth. An "LLC Membership Purchase Agreement" showed that the plaintiff had a .50 percent ownership interest and the defendant had a 1.250 percent interest in the company.[5] An "LLC Interest Purchase Agreement" also showed that the defendant purchased a 1.250 percent ownership interest for one dollar.
The Preston Wealth Web site listed the defendant as a member of its advisory board and displayed a company electronic mail (e-mail) address for him. The only evidence that the defendant used the e-mail address was an e-mail sent to him. The defendant also paid Alexander's expenses in 2011, including a licensing fee, storage fees, and living expenses.
The plaintiff again ended her relationship with Alexander in the fall of 2011. She brought this suit in December, 2011.
In September, 2012, Alexander was missing from the company. Preston Wealth executives and employees who were trying to reach Alexander communicated with the defendant in an effort to reach Alexander. In October, 2012, the defendant sent a letter addressed to Alexander as chief executive officer resigning from the advisory board and asking to be removed from the Web site.
Standard of review. On appeal, we grant deference to the trial judge's findings of fact unless clearly erroneous. The judge's rulings of law are reviewed de novo and the ultimate decision to deny equitable relief is reviewed for abuse of discretion. See Cavadi v. DeYeso, 458 Mass. 615, 624 (2011).
Discussion. 1. Piercing the corporate veil. The plaintiff seeks to pierce the corporate veil and hold the defendant liable for the debt of Preston Ventures on a theory that Preston Ventures was a "sham" corporation controlled by Alexander and the defendant. "The corporate veil may be pierced where the corporate principal exercises (1) some form of pervasive control over the activities of the corporation, and (2) there is some fraudulent or injurious consequence as a result." Kraft Power Corp. v. Merrill, 464 Mass. 145, 152 (2013) (quotation omitted). Twelve factors are considered to determine if this standard was met.[6]
As the trial judge explained in a well-reasoned decision, although the companies were "shams used by Alexander Cole" and Alexander's "alter ego," the plaintiff did not satisfy her burden to demonstrate that the defendant pervasively controlled the companies or that they were his alter ego.
As an initial matter, the plaintiff challenges the trial judge's finding that the defendant did not intend to and did not obtain an ownership interest in Preston Ventures or Preston Wealth. The plaintiff identifies no evidence that the defendant had an ownership interest in Preston Ventures. As for Preston Wealth, the trial judge also noted in her findings that there is an LLC membership purchase agreement for the company stating that the defendant had a 1.25 percent interest. The defendant concedes that he was an owner of 1.25 percent of Preston Wealth. Nevertheless, any ownership interest held by the defendant alone does not demonstrate pervasive control of the activities of either company. The defendant was a member of the advisory board of each company, but there was little evidence as to the role of the boards or the defendant's role on them, other than testimony that the defendant gave advice to Alexander. Additionally, the plaintiff does not dispute that the defendant received no profits from the companies.[7] Furthermore, there was no evidence that the defendant was aware of the plaintiff's loan to Preston Ventures before she approached the defendant and no indication that he was involved in soliciting that loan from her. Considering the totality of the evidence here, we discern no error in the conclusion that piercing the corporate veil to reach the defendant was not justified where the defendant lacked pervasive control and was not an alter ego of the companies. See My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 620 (1968) (piercing the corporate veil only "in rare particular situations"); Evans v. Multicon Constr. Corp., 30 Mass. App. Ct. 728, 736 (1991) ("[T]he exercise is, of course, not one in counting. One examines the twelve factors to form an opinion whether the over-all structure and operation misleads").
2. Joint venture. The plaintiff also argues that the trial judge erred in concluding that the defendant and Alexander were not acting in a joint venture.
A joint venture is "ordinarily, although not necessarily, limited to a single enterprise," and "the relationship of joint adventurers is a matter of intent and arises only when they intend to associate themselves as such." Cardullo v. Landau, 329 Mass. 5, 8 (1952). "[F]actors indicating such an intent include an agreement among the participants for joint profits and a sharing of losses; a contribution of money, assets, talents, etc., to a common undertaking; a joint property interest in the subject matter of the venture; and a right to participate in the control of the venture." Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 623-624 (1990). While the defendant loaned Alexander money and spoke with him about the business, we conclude, largely for the reasons stated above, that the plaintiff failed to carry her burden to show that this amounted to a joint venture and meaningful participation in the business.[8] ,[9]
Judgment affirmed.

This is the second appeal before this court regarding this case. See Tilden v. Cole, 87 Mass. App. Ct. 1134 (2015).

We hereinafter refer to Alexander Cole by his first name to avoid confusion with Donald Cole.

The plaintiff also named Alexander as a defendant in the lawsuit. A default judgment has entered against him. The issues on appeal involve only Donald Cole.

An LLC membership purchase agreement given to another investor did not list an ownership interest for the plaintiff.

Those factors are: "(1) common ownership; (2) pervasive control [over the entity]; (3) confused intermingling of business activity assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; [and] (12) use of the corporation in promoting fraud." Evans v. Multicon Constr. Corp., 30 Mass. App. Ct. 728, 733 (1991). See My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 618-619 (1968).

The trial judge considered the defendant to be a victim of Alexander's conduct, although she also found that the defendant did not testify truthfully about several matters.

To the extent that we do not address the plaintiff's other contentions, they "have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

In the exercise of our discretion, we decline to award the defendant the requested attorney's fees and double costs.